# In the United States District Court
# for the
# Western District of Texas

| Erika Allen | § | |
| --- | --- | --- |
| | § | |
| v. | § | SA-09-CV-122 |
| | § | |
| Greystar Management Services, L.P. | § | |

## Order Regarding Defendant's Motion for Summary Judgment

On this day came on to be considered Defendant's Motion for Summary Judgment (docket no. 30). For the reasons stated below, Defendant's motion is granted.

## Background

Plaintiff filed an Original Petition in the 150th Judicial District Court of Bexar County, Texas on January 30, 2009. In that petition Plaintiff alleged that she was employed by Greystar from June 2004 until her discharge on April 11, 2008. Plaintiff alleges that she informed her supervisor that she was pregnant one month prior to her discharge.[1] Plaintiff alleges that her discharge was

---

[1] In her deposition Plaintiff admits she never informed Heather Leah Dalton, her supervisor, or anyone else at Greystar of her pregnancy until March 10, 2008. See Plaintiff's Depo. at p. 14. Ms. Dalton stated in her deposition that she suspected Plaintiff was pregnant on March 3 when Plaintiff made various comments about symptoms and cravings. Ms. Dalton also stated in her deposition that "sometime in February" Plaintiff asked her whether a switch in birth control would affect her menstrual cycle. "So I didn't think anything about it until she started making pregnancy comments." See Deposition of Page at pp. 129-130. The Court notes that Ms. Dalton now goes by the last name of Page. Exhibits in the summary judgment record reflect the name Dalton and the deposition transcript reflects the name Page.

motivated by her pregnancy in violation of the Texas Commission on Human Rights Act, Tex. Labor Code §§ 21.001, et seq.

On February 13, 2009, Defendant removed this case to this Court alleging diversity jurisdiction. Plaintiff did not contest the timeliness of the removal.

Greystar is a property management company which, among other things, manages multi-family apartment complexes for property owners. Plaintiff was initially employed as a leasing professional. She then was employed as an assistant manager at the Sunrise Canyon complex from July 2007 until April 11, 2008. During this time she was supervised by Ms. Dalton. After her discharge Plaintiff was replaced by Samantha Freeman.[2] On June 11, 2008, Greystar received notice from the owner of Sunrise Canyon that it was terminating its management agreement with Greystar effective September 11, 2008. As a result of this contractual dissolution Ms. Freeman's employment with Greystar was terminated on September 11.[3]

## Defendant's Motion for Summary Judgment

Defendant seeks summary judgment arguing: (1) Plaintiff has failed to establish a prima facie case of pregnancy discrimination (i.e. Plaintiff has failed to identify a non-pregnant employee with a similar poor performance record, who was treated more favorably); (2) Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's discharge and Plaintiff has failed to raise a genuine issue of material fact on the issue of pretext; (3) any front pay or back

---

[2] *See* Deposition of Page at 38.

[3] *See* Exhibit 25 to Defendant's motion for summary judgment.

pay obligations terminated as of September 11, 2008; (4) Defendant is entitled to an offset of back pay liability due to Plaintiff's receipt of $7,999 in unemployment compensation benefits; and (5) Plaintiff has failed to present legally sufficient evidence of mental anguish damages.

## Summary Judgment Standard

A summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(c). Under this standard, "[a] factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant and a fact is considered 'material' if it might affect the outcome of the lawsuit under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993) (*quoting Beck v. Somerset Tech., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)).

## Analysis

A. TCHRA

Plaintiff brings suit pursuant to the Texas Commission on Human Rights Act (TCHRA), which prohibits an employer from, among other things, discharging an employee because of her gender. Tex. Lab. Code Ann. § 21.051. Section 21.051(1) provides that "[a]n employer commits an unlawful employment practice if because of ... sex ... the employer ... discharges an individual, or discriminates in any other manner against an individual in connection with ... privileges of employment." The TCHRA further explains that sex discrimination

includes discrimination "because of or on the basis of pregnancy." § 21.106(a). A stated purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964." Tex. Lab. Code § 21.001(1); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). Accordingly, "'analogous federal statutes and the cases interpreting them guide' the reading of the statute." *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir.2004) (*quoting Quantum*, 47 S.W.3d at 476).

    B.    Disparate Treatment Claim

To prevail on a claim of discrimination based on disparate treatment, a party must prove that: (1) she was a member of a class protected by the Act; (2) she was qualified for her position; (3) she was terminated; and (4) she was treated less favorably than similarly situated members of the opposing class. *See Ysleta Ind. School Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *see also Thompson v. Exxon Mobil Corp.*, 344 F. Supp.2d 971, 980 (E.D. Tex. 2004). As the Texas Supreme Court explained in *Ysleta*, "[e]mployees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. To prove discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of 'comparable seriousness.'" *Id.* at 917 [citations omitted]. Although precise equivalence in culpability is not the ultimate question, a plaintiff must usually show that the misconduct for which she was discharged was nearly identical to the conduct engaged in by an employee whom the company retained.

4

*Id.* at 917-18.

Defendant argues that prior to management becoming aware of Plaintiff's pregnancy, Plaintiff had a series of work performance issues.[4] As a result of these performance problems, on February 15, 2008, Plaintiff was placed on a 30 day action plan[5] and provided additional training from the accounting department. Plaintiff admitted during her deposition that she had been placed on this action plan prior to her notifying Ms. Dalton of her pregnancy.[6] Plaintiff acknowledges that she was required to complete all objectives outlined in the action plan by March 15, 2008. Plaintiff acknowledged in her deposition that she did not satisfactorily complete her 30 day action plan.[7] Indeed, Plaintiff (also a resident in the apartment complex) admits to bouncing her own rent check during the 30 day action plan period.[8]

On April 1, 2008, Ms. Dalton reviewed the situation with her supervisor, Kathie Cadena, and an asset manager.[9] On or about April 10, Ms. Dalton and

---

[4] Plaintiff admitted in her deposition that prior to notifying Leah Dalton of her pregnancy, she had at least twenty bank deposits that were incorrect and required adjustments; she did not always reconcile the deposits after being notified of deposit discrepancies; a male resident of Sunrise Canyon complained that he was being sexually harassed by Plaintiff and Plaintiff admitted to using her private cell phone in calling the resident; Plaintiff was counseled regarding her failure to properly report NSF checks tendered by residents and pursue collection efforts; and as of February 11, 2008, bank deposit discrepancies totaled $31,000. See Plaintiff's Depo. at pp. 27-28, 32, 45, 49, 54 - 59.

[5] *See* Deposition of Page at p. 74.

[6] *See* Plaintiff's Depo. at p. 71.

[7] *Id.* at p. 162.

[8] *Id.* at p. 105.

[9] *See* Deposition of Page at p. 29.

5

Ms. Cadena agreed that Plaintiff's employment should be terminated for failing to improve her performance.[10]  Upon being notified that she was discharged, Plaintiff responded that she couldn't be fired because she was pregnant.[11]

Plaintiff counters that her performance evaluations prior to her pregnancy were satisfactory, that Plaintiff's supervisor's demeanor towards Plaintiff "changed" when she became aware of the pregnancy, that Plaintiff's supervisor had "issues" about pregnancy "stemming from a previous rape and subsequent abortion in the past, as well as a recent pregnancy that ended prematurely"[12], and this "likely led to the strong feelings regarding [Plaintiff's] pregnancy."[13] Plaintiff argues that the performance issues were either fabricated or exaggerated and only were raised after Ms. Dalton became aware of Plaintiff's pregnancy. Plaintiff also argues that most of the bank problems were actually the responsibility of Ms. Dalton.[14] Alternatively, Plaintiff appears to argue that her supervisor failed "to provide her with the bank training she requested on multiple occasions."[15]  Finally, Plaintiff argues that Defendant has propounded differing reasons for her discharge and such alleged inconsistencies also create

---

[10] *Id.* at pp. 31-33.

[11] *See* Deposition of Page at p. 135.

[12] *See* Plaintiff's Response to Defendant's motion for summary judgment at pp. 4 and 12.

[13] *Id.* at p. 12.

[14] *Id.* at p. 10.

[15] *See* Plaintiff's Response to Defendant's motion for summary judgment at p. 11. This argument is rather inconsistent with the earlier argument Plaintiff makes that these tasks were not her responsibility, but rather the responsibility of Ms. Dalton.

6

a material issue of fact warranting the denial of summary judgment. For the reasons stated below, all of Plaintiff's arguments fail as a matter of law.

Some of Plaintiff's past performance reviews were done when she held a completely different job title and had different job responsibilities. Accordingly, the fact that she performed satisfactorily as a leasing professional creates no material fact issue on the question of whether she satisfactorily performed her job duties as an assistant manager. With regard to Plaintiff's December 2007 performance review in her role as an assistant manager, although Plaintiff was given a "successful" rating, she was informed that she could improve in the areas of file organization and "<u>daily</u> review of accounts and researching to stay current."[16]

With regard to Plaintiff's argument that she was not responsible for the bank problems and that these were Ms. Dalton's job, this argument advanced by Plaintiff's counsel is not supported by the record. Plaintiff acknowledged in her deposition that these were her job responsibilities. The job description indicates that these were Plaintiff's responsibilities. Plaintiff provides an affidavit from a former Greystar manager, Bridget Holmes. Plaintiff worked as an assistant manager under Ms. Holmes for a short period of time. In her affidavit Ms. Holmes states that "as an assistant manager, Ms. Swenson[17] was responsible for handling the properties deposit and bookkeeping transactions, and making

---

[16] *See* Exhibit 2 to Plaintiff's Response (underscore in original). Plaintiff acknowledged in her deposition that these were areas she needed to work on. *See* Plaintiff's Depo. at p. 28.

[17] Swenson is the last name formerly used by Plaintiff.

7

necessary postings and reports in Greystar's computer systems."[18] Ms. Dalton did have supervisory responsibility, and Plaintiff argues that her supervisor did not supervise adequately, but that does not relieve the Plaintiff from the obligation to perform her own job satisfactorily.

Plaintiff has failed to establish a prima facie case of pregnancy discrimination. *See Puente v. Ridge*, 324 Fed. Appx. 423 (5th Cir. 2009) (a prima facie case of pregnancy discrimination requires the plaintiff to show that in the case of disparate treatment that others similarly situated were treated more favorably). Plaintiff has failed to identify a non-pregnant employee with a similar poor performance record who was treated more favorably.[19] The fact that Plaintiff was replaced by a non-pregnant employee does not create a material fact issue.

Defendant also raises an alternative argument for summary judgment. Defendant argues it has articulated a legitimate, non-discriminatory reason for Plaintiff's discharge and Plaintiff has failed to raise a genuine issue of material fact on the issue of pretext.

In support of her argument that the performance issues only surfaced after Plaintiff's supervisor became aware of her pregnancy, Plaintiff argues that Ms. Dalton was aware of her pregnancy sometime in February 2008. There is no competent summary judgment evidence in the record to support this argument. The competent summary judgment evidence indicates that Ms. Dalton became

---

[18] *See* Exhibit 3 to Plaintiff's Response.

[19] *See* Plaintiff's Depo. at p. 163.

aware of Plaintiff's pregnancy on March 3, 2008. Accordingly, Plaintiff's argument that Defendant's stated reasons (performance issues) are somehow false and unworthy of credence fails. Plaintiff's performance issues were documented by the Defendant prior to it ever becoming aware of Plaintiff's pregnancy.

Prior to March 3, Plaintiff was provided with a series of emails that indicated problems with bank debits and credits.[20] She was provided with additional instructions by email about deposit instructions and warned that these "are not to be ignored, but researched immediately."[21] On February 15, Ms. Dalton informed her supervisor, Ms. Cadena, that "it is now necessary to review a 30 day action plan with Erika. We had to have an attitude check this morning about Texas Legacy. She is a seasoned assistant and needs to take the responsibility upon herself to ensure she understand [sic], and researches all banking responsibilities."[22] On February 15, Ms. Dalton reviewed the 30 day action plan with Plaintiff.[23] On February 25, a written counseling was given to the Plaintiff about not researching bank reports.[24] Plaintiff disagreed with the counseling and stated that she "needed more training. I now know that I have to look at Bank reports every day. Jay and Paula have both come down to San

---

[20] *See* Exhibit 13 to Defendant's motion for summary judgment.

[21] *See* Exhibit 14 to Defendant's motion for summary judgment.

[22] *See* Exhibit 16 to Defendant's motion for summary judgment.

[23] *See* Exhibit 17 to Defendant's motion for summary judgment.

[24] *See* Exhibit 9 to Plaintiff's Response to motion for summary judgment.

Antonio to speak with me. I now understand a lot more on how the legacy system works!"[25] As stated above, in her deposition Plaintiff conceded that she did not satisfactorily complete the action plan.

The only other arguments raised by Plaintiff in support of her pretext theory is counsel's statement that Ms. Dalton's personal past "likely led" to "strong feelings regarding Allen's pregnancy."[26] Plaintiff also testified that Dalton gave her the "cold shoulder."[27] Plaintiff's or her counsel's speculations are not competent summary judgment evidence. *Malouse v. Winter*, 338 Fed. Appx. 356 (5th Cir. 2009). Finally, Plaintiff argues that some employee informed Ms. Dalton's supervisor that Ms. Dalton was jealous of Plaintiff's pregnancy.[28]

---

[25] *Id.*

[26] The deposition testimony reflects that on March 10, Plaintiff and Ms. Dalton had a private conversation wherein Plaintiff told Ms. Dalton she was pregnant and unsure of who the father was. Plaintiff expressed reservations about marrying the likely father. Ms. Dalton told Plaintiff if "you're not sure to marry someone, you don't marry someone." Ms. Dalton testified that she meant "so just by marrying him would not create a right, wouldn't make her pregnancy right." Ms. Dalton further testified that she spoke with the Plaintiff about her own problems carrying. The two women also discussed abortion and Ms. Dalton told Plaintiff that she had an abortion after being impregnated after a rape. Ms. Dalton testified that she regretted her decision to abort and shared that story with the Plaintiff. She also encouraged Plaintiff not to consider abortion as an option. Ms. Dalton testified that she did not "feel that [plaintiff's] pregnancy was wrong. Ms. Dalton testified that she told her supervisor that maybe Plaintiff's personal problems, not her pregnancy, were affecting her job performance. *See* Deposition of Page at pp. 128 - 133. Plaintiff did not contradict this version of events in her deposition nor did she offer any affidavit refuting this testimony.

[27] Plaintiff's Response to MSJ at p. 12. Plaintiff stated in her deposition that prior to becoming aware of the pregnancy, Ms. Dalton's demeanor was not ideal. After becoming aware of the pregnancy, Plaintiff testified that her demeanor "got worse." "She got to the point where she just wouldn't talk to any - - or talk to me at all, and the only communication she would make was thru e-mail. She would go into her office and close her blinds and close her door." *See* Plaintiff's Depo. at p. 104.

[28] *Id.* Ms. Cadena actually testified that "Ms. Page did tell me that either Erika told her or told someone else that she was jealous of her pregnancy." *See* Depo of Cadena at pp. 30-31.

Again Plaintiff's speculation or subjective belief is not competent summary judgment evidence.[29]

Defendant's motion for summary judgment is GRANTED. Plaintiff has failed to establish a prima facie case of pregnancy discrimination. Plaintiff has failed to identify a non-pregnant employee with a similar poor performance record who was treated more favorably. Alternatively, Defendant has articulated a legitimate, non-discriminatory reason for Plaintiff's discharge and Plaintiff has failed to raise a genuine issue of material fact on the issue of pretext.[30]

The Clerk is instructed to issue a judgment in favor of the Defendant. Defendant shall submit its Bill of Costs within 14 days in the form directed by the Clerk should it desire to pursue these costs.

It is so ORDERED.

SIGNED this 11th day of January, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[29] To the extent that this comment can be interpreted as some other employee telling Plaintiff or Cadena that Dalton was jealous of Plaintiff's pregnancy, Defendant's hearsay objection is sustained.

[30] Because of the Court's disposition of this case, we will not address the damages issues alternatively raised by Defendant.